**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BETTE M. GROSSMAN, on behalf of herself and all others similarly situated,<br><br>     Plaintiff,<br><br>        vs.<br><br>OPPENHEIMER & CO. INC., FREEDOM INVESTMENTS INC., OPPENHEIMER ASSET MANAGEMENT and OPPENHEIMER HOLDINGS INC.,<br><br>     Defendants. | 08-CV-3528 (LAP) |
| DAVID T. VINING, Individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>        vs.<br><br>OPPENHEIMER HOLDINGS INC., OPPENHEIMER & CO., INC., and OPPENHEIMER ASSET MANAGEMENT, INC.<br><br>     Defendants. | 08-CV-4435 (LAP) |

## DEFENDANTS' RESPONSE TO MOTIONS FOR CONSOLIDATION OF ACTIONS, APPOINTMENT OF LEAD PLAINTIFF, AND APPOINTMENT OF LEAD COUNSEL

Howard Wilson
Stephen L. Ratner
Scott A. Eggers
John H. Snyder
PROSKAUER ROSE LLP
1585 Broadway
New York, NY 10036
Tel: 212.969.3000

*Counsel for Defendants*

Defendants Oppenheimer & Co. Inc., Freedom Investments, Inc., Oppenheimer Asset Management, Inc. and Oppenheimer Holdings, Inc. (collectively, "Oppenheimer") submit this brief in response to the competing motions for consolidation, appointment of lead plaintiff and appointment of lead counsel filed on June 10, 2008 in the above-captioned actions by Bette M. Grossman (the "*Grossman* action") and David T. Vining (the "*Vining* action").[1]  (*See Grossman*, Dkt. No. 15; *Vining*, Dkt. No. 12.)

### A.    Oppenheimer Agrees That The *Grossman* and *Vining* Actions Should Be Consolidated.

Grossman and Vining have both moved for consolidation of the two actions pursuant to Rule 42(a) of the Federal Rules of Civil Procedure.  Oppenheimer agrees that the *Grossman* and *Vining* actions should be consolidated.  The complaints in the two actions contain virtually identical allegations and purport to seek relief on behalf of the same purported class of purchasers of auction rate securities through Oppenheimer.[2]

---

[1]    The issues addressed in this brief relate to both the *Grossman* and *Vining* actions and the procedural path these actions will take.  Accordingly, Oppenheimer is filing this brief in both actions.

[2]    Oppenheimer believes that the Court may consolidate the *Grossman* and *Vining* actions on the basis that they both purport to seek certification of the same class, without making any determination as to the factual relatedness of the underlying claims.  Rule 42(a) requires only that the actions "involve a common question of law or fact."  The two cases plainly present common issues of law, including the sufficiency of the pleadings, which are substantially identical in both cases.  Thus, the Court need not consider factual relatedness at this stage, an issue better reserved for exploration at the class certification stage.

**B.    Oppenheimer Takes No Position As To
Appointment of Lead Plaintiff or Lead Counsel,
<u>Other Than To Provide Pertinent Information.</u>**

Oppenheimer takes no position as to which of the proposed lead plaintiffs or lead counsel should be appointed.[3]  However, Oppenheimer wishes to bring to the Court's attention additional information bearing upon this issue.  *See Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. LaBranche & Co., Inc.*, 229 F.R.D. 395, 405-06 (S.D.N.Y. 2004) ("the process by which a lead plaintiff is selected 'work[s] better with more information than less.' . . . . In that spirit . . . defendants have standing to be heard during the appointment process.") (quoting *King v. Livent, Inc.*, 36 F.Supp.2d 187, 191 (S.D.N.Y.1999)).

**1.    Grossman's Claims Are Time Barred.**

Oppenheimer believes that the claims asserted by plaintiff Grossman are time barred.  By letter dated June 12, 2008, Oppenheimer advised Ms. Grossman's counsel that, based on her account statements, it appears that Ms. Grossman purchased the auction rate securities at issue in February 2003.  (A copy of this letter, with certain identifying personal information redacted, is annexed as Exhibit 1.)  The claims asserted by Ms. Grossman are subject to a five-year statute of repose.  *See* 28 U.S.C. § 1658(b).  The repose period runs from the time of the alleged fraudulent

---

[3]    In connection with their motions for appointment as lead plaintiff, Grossman and Vining argue that they satisfy the adequacy and typicality requirements of Rule 23 of the Federal Rules of Civil Procedure.  At the lead plaintiff appointment stage, "[t]he moving plaintiff must make only a preliminary showing that the adequacy and typicality requirements under Rule 23 have been met."  *Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 252 (S.D.N.Y. 2003).  Oppenheimer reserves the right to contest class certification in the future, including the eventual lead plaintiff's satisfaction of the adequacy and typicality requirements.  *See Ferrari v. Impath, Inc.*, 2004 WL 1637053 at *4 (S.D.N.Y. July 20, 2004) ("Any preliminary class certification findings of adequacy and typicality made at this time, do not preclude any party from contesting the ultimate class certification."); *Weltz v. Lee*, 199 F.R.D. 129, 133-34 (S.D.N.Y. 2001) ("[B]ecause [the PSLRA] only requires preliminary class certification findings, the Court does not preclude any party from contesting the ultimate class certification on the basis of the determinations made in the [lead plaintiff] petition.").

misrepresentation, which by definition occurs at or before the time the security is purchased. *See Northwestern Human Services, Inc. v. Panaccio*, 2004 WL 2166293, *18 (E.D. Pa. Sept. 24, 2004) ("[a] 'violation' of section 10(b) occurs not at the time the securities are purchased but on the date that the alleged fraudulent misrepresentation is made or, in the case of an omission, on the date a duty to disclose the withheld information arises. . . . As a matter of simple logic, any misrepresentation or omission must have occurred on or before the date of sale.").  Accordingly, Ms. Grossman's claims accrued in February 2003 at the latest.  Ms. Grossman did not file her complaint until April 11, 2008, more than five years later, and her claims are therefore time barred.

Obviously, this analysis impacts the suitability of Ms. Grossman to act as lead plaintiff, since she is not even a member of the proposed class.  We note, however, that Ms. Grossman's counsel appears to have other clients who are identified in their motion papers, and who apparently seek appointment as lead plaintiffs, although they are not identified in Ms. Grossman's Complaint.  *See* Dkt. 17 [D'Agnenica Decl.] at Exh. B.

> **2.    These Actions Should Proceed Notwithstanding The Motion That Was Filed By Vining's Counsel To Transfer Them To An MDL Proceeding.**

On or about June 12, 2008, counsel for Vining filed a motion and supporting brief with the Judicial Panel on Multidistrict Litigation to transfer and coordinate the *Grossman* and *Vining* actions (along with some 29 other actions against 15 other financial institutions) as a single, multi-district litigation covering all cases involving auction rate securities of any type filed anywhere in the country.  (A copy of the motion and supporting brief are annexed as Exhibit 2.)  The motion of Vining's counsel to transfer and coordinate all auction rate securities litigation does not affect this Court's jurisdiction over the matters here presented.  *See* J.P.M.L. R.P. 1.5 ("[t]he pendency of a motion . . . before the Panel concerning transfer or remand of an action

pursuant to 28 U.S.C. §1407 does not affect or suspend orders and pretrial proceedings in the district court in which the action is pending and does not in any way limit the pretrial jurisdiction of that court."); *In re Four Seasons Securities Laws Litigation*, 362 F.Supp. 574, 575 n.2 (J.P.M.L. 1973) (same).

Moreover, as will be addressed in full before the Judicial Panel on Multidistrict Litigation, the auction rate securities litigations do not lend themselves to treatment as class actions, much less to industry-wide treatment, and for that reason, Oppenheimer intends to oppose the motion for transfer and coordination before the Judicial Panel on Multidistrict Litigation. In any event, the mere filing of this motion does not affect the Court's present jurisdiction, and given the circumstances, there is no reason why the *Grossman* and *Vining* actions should not proceed in the ordinary course.

## CONCLUSION

Based on the foregoing, Oppenheimer supports the consolidation of the *Grossman* and *Vining* actions pursuant to Rule 42(a) and takes no position with respect to the appointment of lead plaintiff and lead counsel.

Dated:      New York, New York
            June 24, 2008

                              Respectfully submitted,

                              /s/ Howard Wilson

                              Howard Wilson
                              Stephen L. Ratner
                              Scott A. Eggers
                              John H. Snyder
                              PROSKAUER ROSE LLP
                              1585 Broadway
                              New York, NY 10036
                              Tel:  212.969.3000

                              *Counsel for Defendants*

4

EXHIBIT 1

BOCA RATON
BOSTON
CHICAGO
LONDON
LOS ANGELES
NEW ORLEANS
NEWARK
PARIS
SÃO PAULO
WASHINGTON

1585 Broadway
New York, NY  10036-8299
Telephone 212.969.3000
Fax 212.969.2900

# PROSKAUER ROSE LLP

**Scott A. Eggers**
Senior Counsel

Direct Dial 212.969.3412
seggers@proskauer.com

June 12, 2008

**BY E-MAIL (mlevine@ssbny.com)**

Mark Levine, Esq.
Stull, Stull & Brody
6 East 45th Street
New York, NY 10017

     Re:    *Grossman v. Oppenheimer & Co., Inc.*, 08-CV-3528 (S.D.N.Y.)

Dear Mark:

     As I mentioned in our telephone call yesterday, upon our review of this matter, it is evident to the Oppenheimer defendants that the claims asserted in Ms. Grossman's Complaint are time-barred, as explained below.  Although Ms. Grossman's Complaint is based on the allegation that she purchased the securities in question in October 2006, in fact she purchased them in February 2003.  Wholly apart from any deficiencies in that Complaint, which we will be setting forth separately in accordance with the Court's orders, we believe that Ms. Grossman's claims are plainly not viable.  We therefore request that Ms. Grossman voluntarily discontinue her litigation.

     Ms. Grossman's February 2003 account statement (copy annexed) shows that she purchased four (4) shares of "Muniholdings New York Insured Fund, Inc." auction rate securities on February 5, 2003.  (*See* p. 4 of that account statement.)

     Ms. Grossman's October 2006 account statement (copy annexed) shows that on October 3, 2006, Ms. Grossman's account was debited four (4) shares of "Muniholdings NY Insd." and credited with four (4) shares of "Blackrock Muniholdings NY Insd." securities.

     The October 3, 2006 exchange is explained by Blackrock's Certified Shareholder Report, filed on November 8, 2006 and accessible on the SEC website (under "Blackrock Muniholdings New York Insured Fund, Inc.").  That SEC filing includes a letter to shareholders, which states in relevant part:

PROSKAUER ROSE LLP

Mark Levine, Esq.
June 12, 2008
Page 2

> On September 29, 2006, BlackRock, Inc. ("BlackRock") and
> Merrill Lynch Investment Managers, L.P. ("MLIM") united to
> form one of the largest asset management firms in the world. . . .
>
> As you probably are aware, former MLIM investment products
> now carry the "BlackRock" name. This is reflected in newspapers
> and online fund reporting resources. Your account statements will
> reflect the BlackRock name beginning with the October month-end
> reporting period. Unless otherwise communicated to you, your
> funds maintain the same investment objectives that they did prior
> to the combination of MLIM and BlackRock. . . .

Thus, the exchange reflected on Ms. Grossman's October 2006 account statement was not the purchase of an auction rate security, but merely a name change by the issuer.

As you are no doubt aware, claims under Rule 10b-5 are subject to a five-year statute of repose pursuant to 28 U.S.C. § 1658(b). The repose period runs from the time of the alleged fraudulent misrepresentation, which by definition must occur before the purchase of the security. *See Northwestern Human Services, Inc. v. Panaccio*, 2004 WL 2166293, *18 (E.D. Pa. Sept. 24, 2004) ("[a] 'violation' of section 10(b) occurs not at the time the securities are purchased but on the date that the alleged fraudulent misrepresentation is made or, in the case of an omission, on the date a duty to disclose the withheld information arises. . . . As a matter of simple logic, any misrepresentation or omission must have occurred on or before the date of sale.").

Because Ms. Grossman purchased the securities at issue on or about February 5, 2003, the alleged fraudulent misrepresentation necessarily occurred no later than that date. Thus, the five-year repose period expired no later than February 5, 2008, and therefore Ms. Grossman's Complaint, filed on April 11, 2008, is time-barred.

In light of the foregoing, we request that Ms. Grossman voluntarily discontinue her litigation. Please call if you have any questions.

Very truly yours,

Scott A. Eggers

**SIPC**

Cash and securities held by us in your client account(s) are protected in two ways. Through our membership in SIPC (Securities Investor Protection Corp.), processes or...

The Firm supplements this by providing similar protection for the remainder of the cash and/or securities that we hold on your behalf. This statement shall be conclusive if not objected to in writing within ten days.

Please address all communications to the Firm and not to individuals. Address changes or other material changes on your account should be directed to the office serving your account. We recommend that you retain this statement, to assist you in tax reporting activities.

# OPPENHEIMER & Co.
### A Division of Fahnestock & Co. Inc.

Clearing Agent
Fahnestock & Co. Inc.
125 Broad Street
New York, New York 10004
(212) 668-8000

## CLIENT ACCOUNT STATEMENT

PAGE 1 OF    K 10

| Account Number | SS#/Tax ID | Prior Statement | Period Ending |
|---|---|---|---|
| | | 01-31-03 | 02-28-03 |

**Your Broker**    Office Serving Your Account

HILLER LONGBOTHAM - 673

(212) 667-4000
(800) 999-6726

622 THIRD AVENUE
NEW YORK, NY 10017-6707

Internet Address:    www.cibcoppenheimer.com

BETTE M GROSSMAN

## Asset Summary

| | 01/31/03 Previous Period | 02/28/03 This Period | Year to Date | Account % |
|---|---|---|---|---|
| Cash Balance | 0.00 | 0.00 | 20.12CR | 23 |
| NET BALANCE | 0.00 | 0.00 | 20.12CR | 77 |
| Money Market | 0.00 | 37.40 | | |
| Equities | 0.00 | 100,000.00 | | |
| Municipal Bonds | 424,218.40 | 328,741.45 | | |
| TOTAL ASSET VALUE | $424,218.40 | $428,798.97 | | 100% |

## Cash Activity Summary

| | This Period | Year to Date |
|---|---|---|
| Total Income | 57.52 | 57.52 |
| Miscellaneous | 100,000.00 | |
| NET CASH FLOW | $100,057.52 | |

## Income Summary

| | This Period | Year to Date |
|---|---|---|
| Non-Taxable Dividends | 57.52 | 57.52 |
| TOTAL INCOME | $57.52 | $57.52 |

## Bulletin Board

WE DRAW YOUR ATTENTION TO THE ENCLOSED LETTER
FROM JACK LOEDWELL, CHAIRMAN AND CHIEF
EXECUTIVE OFFICER OF FAHNESTOCK & CO. INC.
PLEASE TAKE A MOMENT TO READ IT. THANK YOU.

## ITEMS FOR ATTENTION

| Description | Quantity | Coupon | Message |
|---|---|---|---|
| There Are No Assets Due To Mature or Expire Within The Next (60) Days | | | |

| | This Period | Year to Date |
|---|---|---|
| Commission | 0.00 | 0.00 |
| | 0.00 | 0.00 |

BETTE M GROSSMAN

| | Account Number | Broker | Page | Period Ending |
|---|---|---|---|---|
| | | MILLER LONGBOTHAM - 673 | 2 OF 5 | 02-28-03 |

## Portfolio Holdings

Some prices, current values and income estimates may be approximations, resulting in gains and losses not being accurately reflected. Unrealized gains and / or losses are computed from the supplied cost basis data and may not be accurate for tax reporting purposes. Items for which cost basis was not available as of the statement period ending date are indicated by the symbol N/A. Please contact your broker if you believe any cost basis related data is inaccurate or if you require additional information.

### Money Market Funds

| Description | Account Type | Quantity | Symbol | Unit Cost | Current Price | Total Cost Basis | Current Value | Estimated Yield | Annual Income | Portfolio Percent |
|---|---|---|---|---|---|---|---|---|---|---|
| CIBC WORLD MARKETS | | | | | | | | | | |
| NEW YORK TAX EXEMPT FUND | CASH | 37.4 | CYEXX | 1.0000 | 1.00000 | 37.40 | 37.40 | 0.3 | | 0.00 |
| SUB-TOTAL MONEY MARKET FUNDS........ | | | | | | 37.40 | 37.40 | | | 0.00 |

### Equities
### Preferred or Other Stock

| Description | Account Type | Quantity | Symbol | Unit Cost | Current Price | Total Cost Basis | Current Value | Unrealized Gain/(Loss) | Estimated Yield | Annual Income | Portfolio Percent |
|---|---|---|---|---|---|---|---|---|---|---|---|
| WHHHHHDINGS H Y INS3 F3 INC | | | | | | | | | | | |
| AUCTION MKT PFD STK SER E | CASH | 4 | M005810 | 25,000.0000 | 25000.00000 | 100,000.00 | 100,000.00 | 0 | | | 23.32 |
| C/$5/01 | | | | | | | | | | | |
| SUB-TOTAL PREFERRED OR OTHER STOCK... | | | | | | 100,000.00 | 100,000.00 | 0 | | | 23.32 |
| SUB-TOTAL EQUITIES................... | | | | | | 100,000.00 | 100,000.00 | 0 | | | 23.32 |

### Bonds
### Municipal Bonds in Pre-Refunded Date, Then Maturity Date Sequence

| Description | Account Type | Quantity | Ratings | Open Date | Unit Cost | Current Price | Total Cost Basis | Current Value | Unrealized Gain/(Loss) | Estimated Yield | Annual Income | Portfolio Percent |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| NEW YORK STATE DORM AUTH STATE CASH | | 5,000 | A3 /A | 12/02/??? | 68.0850 | 96.05500 | 3,469.30 | 4,802.75 | 1,356 | | | 1.12 |
| UNIV CEL FAC-Q-CFN C/A 7/25% | | | 649631925 | | | | | | | | | |
| NYS SER 2000 | | | | | | | | | | | | |
| RATED DATE 10/12/89 | | | | | | | | | | | | |
| BOOK ENTRY ONLY | | | | | | | | | | | | |
| ORIGINAL ISSUE DISCOUNT | | | | | | | | | | | | |
| DUE 05/15/2005 | | | | | | | | | | | | |
| PUERTO RICO COMMLTH RFDG | CASH | 25,000 | AAA /AAA | 07/19/02 | 85.4930 | 93.53900 | 21,377.10 | 23,399.75 | 2,023 | | | 5.45 |
| CUSTAL RCFTS/CTS ZERO CPN C/A | | | 745144025 | | | | | | | | | |
| 7.40% | | | | | | | | | | | | |
| INTEREST FROM DATE 06/03/88 | | | | | | | | | | | | |
| RATED DATE 06/03/88 | | | | | | | | | | | | |
| ORIGINAL ISSUE DISCOUNT | | | | | | | | | | | | |
| MBIA INSURED | | | | | | | | | | | | |
| DUE 07/01/2006 | | | | | | | | | | | | |

Cash and securities held by us in your client account(s) are protected in two ways. Through our membership in SIPC (Securities Investor Protection Corp), protection is provided up to $500,000, of which no more than $100,000 can be in cash. The firm supplements this by providing similar protection for the remainder of the cash/or securities that we hold on your behalf. This statement shall be conclusive if not objected to in writing within ten days. Please address all communications to the firm and not to individuals. Address changes or other material changes on your account would be directed to the office serving your account. We recommend that you retain this statement to assist you in tax reporting activities.

SIPC

M  10

# OPPENHEIMER & CO.
A Division of Fahnestock & Co., Inc.

Oppenheimer & Co.
CRBC Global Markets Corp.
125 Broad Street
New York, New York 10004-2400
(212) 825-4000

# CLIENT ACCOUNT STATEMENT

**BETTE M GROSSMAN**

| | | | |
|---|---|---|---|
| **Account Number** | **Broker** | | **Period Ending** |
| ▓▓▓▓ | HILLER LONGBOTHAM - 673 | | 02-28-03 |

M 10

**Page**

3 OF 5

## Municipal Bonds in Pre-Refunded Date, Then Maturity Date Sequence (continued)

| Description | Account Type | Quantity | Rating | Open Date | Unit Cost | Current Price | Total Cost Basis | Current Value | Unrealized Gain/(Loss) | Estimated Yield | Annual Income | Portfolio Percent |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| NEW YORK CITY PRIN MUN RCPTS 0s 2/1/07 O/CPN YLD 5.18 FSA CR REFTGCMTS PYMNT INTEREST FROM DATE 01/25/96 DATED DATE 01/04/96 ORIGINAL ISSUE DISCOUNT FSA INSURED DUE 02/01/2007 | CASH | 15.000 | AAA /AAA 649664VV8 | 02/04/98 | 66.9000 | 91.06200 | 10,038.85 | 13,659.30 | 3,620 | | | 3.18 |
| NEW YORK CITY PRIN M-RAES 0s 8/1/7-O-CPN C/A 7.24 CUSTDL REFTGCMTS ESCR INTEREST FROM DATE 06/20/88 DATED DATE 06/20/88 ORIGINAL ISSUE DISCOUNT DUE 08/01/2007 | CASH | 150.000 | AAA /AA- 649654CY2 | 00/00/00 | N/A | 90.33100 | N/A | 135,496.50 | N/A | | | 31.60 |
| WASHINGTON PUB PWR SPLY SYS ZERO CPN C/A 7.20% NUCLEAR PROJ #3 DATED DATE 12/21/89 ORIGINAL ISSUE DISCOUNT DUE 07/01/2008 | CASH | 75.000 | AA1 /AA- 939830GR0 | 00/00/00 | N/A | 84.14500 | N/A | 63,108.75 | N/A | | | 14.71 |
| GEORGIA MUN ELEC AUTH PWR REV GENL SER B-ZERO CPN C/A 7.10% INTEREST FROM DATE 09/07/89 DATED DATE 09/07/89 ORIGINAL ISSUE DISCOUNT BTG INSURED DUE 01/01/2009 | CASH | 50.000 | AAA /AAA 373510CZ6 | 00/00/00 | N/A | 82.61100 | N/A | 41,305.50 | N/A | | | 9.63 |
| ILLINOIS HSG DEV AUTH REVS ZERO CPN C/A 11.50% LOYOLA SER-A DATED DATE 05/13/04 ORIGINAL ISSUE DISCOUNT DUE 07/01/2014 PRE-REFUNDED 07/01/09 @ 57.17 | CASH | 25.000 | A1 /AR 452001YP0 | 00/00/00 | N/A | 46.59800 | N/A | 11,649.50 | N/A | | | 2.71 |
| NEW YORK ST LOCAL GOVT ASSTNCE CORP SER B -O-CPN 7.40% DATED DATE 06/25/91 BOOK ENTRY ONLY ORIGINAL ISSUE DISCOUNT DUE 04/01/2010 | CASH | 10.000 | A1 /AA- 649876GR5 | 12/18/98 | 60.5540 | 76.97400 | 6,059.25 | 7,697.40 | 1,638 | | | 1.79 |

Cash and securities held by us in your client account(s) are protected in two ways. Through our membership in SIPC (Securities Investor Protection Corp), protection is provided up to $500,000, of which as much as $100,000 can be in cash, except that claims for cash and securities which are awaiting reinvestment are limited to $500,000. The firm supplements this by providing similar protection for the remainder of the cash and/or securities that we hold on your behalf. This statement shall be conclusive if not objected to in writing within ten days. Please address all cancellations to the firm and not to individuals. Address changes or other material charges on your account should be directed to the office serving your account. We recommend that you retain this statement to assist you in your reporting activities.



Case 1:08-cv-03528-LAP    Document 18-2    Filed 06/24/2008    Page 7 of 12

# Oppenheimer & Co.

A Division of Fahnestock & Co. Inc.

Oppenheimer Tower
World Financial Center
New York, New York 10281-1099
(212) 667-8000

## CLIENT ACCOUNT STATEMENT

| | | |
|---|---|---|
| Account Number | Broker | Period Ending |
| | MILLER LONGBOTHAM - 673 | 02-28-03 |

| | Page |
|---|---|
| N 10 | 4 OF 5 |

BETTE M GROSSMAN

---

## Municipal Bonds in Pre-Refunded Date, Then Maturity Date Sequence (continued)

| Description | Account Type | Quantity | Rating | Open Date | Unit Cost | Current Price | Total Cost Basis | Current Value | Unrealized Gain/(Loss) | Estimated Yield | Annual Income | Portfolio Percent |
|---|---|---|---|---|---|---|---|---|---|---|---|
| ILLINOIS EDL FACS AUTH REVS -Q-CPM C/A 11.50% LOYOLA UNIV -ESCROWED TO MTY-P- DATED MATD 10/13/84 ORIGINAL ISSUE DISCOUNT DUE 02/01/2014 | CASH | 50,000 | A1 / AAA | 00/00/00 | N/A | 55.24400 | N/A | 27,622.00 | N/A | | | 6.44 |
| SUB-TOTAL MUNICIPAL BONDS | | 405,000 | | | | | 40,923.50 | 328,741.45 | 8,635 | | | 76.63 |
| SUB-TOTAL BONDS | | 405,000 | | | | | 40,923.50 | 328,741.45 | 8,635 | | | 76.63 |

| | Total Cost Basis | Current Value | Unrealized Gain/(Loss) | Estimated Yield | Annual Income | Portfolio Percent |
|---|---|---|---|---|---|---|
| | $140,960.50 | $428,778.05 | $8,635 | | $0 | 100% |

**Total Portfolio Value..........**

◆ NOTE: Your account contains one or more lots with no cost basis available. These lots are not reflected in your Total Cost Basis or Unrealized Gain/(Loss) summary figures.

---

## Transactions/Activity Detail

Unless otherwise noted, transactions listed below will reflect only those transactions which have settled as of the statement period ending date. Estimated realized gains/losses may not be accurate for tax reporting purposes. The client account uses the highest cost basis to calculate gains/losses first-in/first-out or FIFO securities unless you specified which lot to close when you placed your order. Gains/losses may be inaccurate for all partial charges and are not calculated for zero coupon securities.

| Date | Type | Quantity | Transaction | Description | Activity | Price/Entry | Amount | Realized Gain/(Loss) | COMMISSION |
|---|---|---|---|---|---|---|---|---|---|
| | | | | ** BUY AND SELL TRANSACTIONS ** | | | | | |
| 02-05 | CASH | 4 | BUY | MORNINGHINGS N Y INSD F3 INC AUCTION MKT PFD STK SER E 6/5/01 | PRICE-25M | 0.0000 | 100,000.00 DEBIT | | 0.00 |
| | | | | Net Buy and Sell Transactions.......... | | | $100,000.00 DEBIT | | |
| | | | | ** REDEMPTIONS ** | | | | | |
| 02-03 | CASH | -100,000 | RED | NEW YORK CITY SER R ZERO CPN C/A 7.4% | DUE 02/01/03 ISSUE REDEEMED FOR CASH REDEEMED | 100,000.00 CREDIT | | SEE LEGEND G/L IMPACTED BY OID | |
| | | | | Net Proceeds/(Charges) From Redemptions.......... | | | $100,000.00 CREDIT | | |

---

Cash and securities held by us in your client account(s) are protected in two ways. Through our membership in SIPC (Securities Investor Protection Corp), protection is provided up to $500,000, of which no such as $100,000 can be in cash. The firm supplements this by providing similar protection for the remainder of the cash and/or securities that we hold in your behalf. This statement shall be conclusive if not objected to in writing within ten days. For tax reporting purposes, the client uses the highest cost basis to calculate gains/losses. If you have any questions concerning this statement, or other material charges on your account should be directed to the office serving your account, is recommend that you retain this statement to compare all transactions to the firm and not to individuals. Address changes or other material charges on your account should be directed to the office serving your account, is recommend that you retain this statement.



# OPPENHEIMER & CO.
A Division of Oppenheimer & Co. Inc.

Oppenheimer & Co. Inc.
125 Broad Street
New York, New York 10004-2430
(212) 668-8000

# CLIENT ACCOUNT STATEMENT

O 10

| | |
|---|---|
| **Page** | 5 OF 5 |
| **Account Number** | |
| **Broker** | MILLER LONGBOTHAM – 673 |
| **Period Ending** | 02/28/03 |

BETTE M GROSSMAN

| Date Type | Quantity | Transaction | Description | Activity | Price/Entry | Amount | Comments |
|---|---|---|---|---|---|---|---|
| | | | ** INCOME ACTIVITIES ** | | | | |
| 02-12 CASH | | DIVIDEND | NONHOLDINGS N Y INSD FD IMC AUCTION MKT PFD STK SER E 6/5/01 | CASH DIV  OH  4 SHS REC 02/11/03 PAY 02/12/03 | 5.0300/sh | 20.12 CREDIT | |
| 02-19 CASH | | DIVIDEND | NONHOLDINGS N Y INSD FD IMC AUCTION MKT PFD STK SER E 6/5/01 | CASH DIV  OH  4 SHS REC 02/18/03 PAY 02/19/03 | 4.3200/sh | 17.28 CREDIT | |
| 02-26 CASH | | DIVIDEND | NONHOLDINGS N Y INSD FD IMC AUCTION MKT PFD STK SER E 6/5/01 | CASH DIV  OH  4 SHS REC 02/25/03 PAY 02/26/03 | 5.0300/sh | 20.12 CREDIT | |
| | | | Net Income ... | | | $57.52 CREDIT | |
| | | | ** MONEY FUNDS ACTIVITIES ** | | | | |
| 02-04 CASH | 100,000 | FND | CIBC WORLD MARKETS NEW YORK TAX EXEMPT FUND | | FUND | 100,000.00 DEBIT | |
| 02-05 CASH | -100,000 | FND | CIBC WORLD MARKETS NEW YORK TAX EXEMPT FUND | | FUND | 100,000.00 CREDIT | |
| 02-12 CASH | 20.12 | FND | CIBC WORLD MARKETS NEW YORK TAX EXEMPT FUND | | FUND | 20.12 DEBIT | |
| 02-26 CASH | 17.28 | FND | CIBC WORLD MARKETS NEW YORK TAX EXEMPT FUND | | FUND | 17.28 DEBIT | |
| | | | Net Money Funds Purchased ... | | | $37.40 DEBIT | |

SEE LEGEND ── Terms and definitions pertaining to these capital changes may be subject to tax reporting provisions.
We suggest that you consult with your professional tax advisor for further guidance.

**** THIS IS THE END OF YOUR STATEMENT. WE THANK YOU FOR BEING A VALUED CLIENT. ****

Cash and securities held by us in your client account(S) are protected in two ways. Through our membership in SIPC (Securities Investor Protection Corp), protection is provided up to $500,000, of which as much as $100,000 can be in cash, of which are held on your behalf. This statement shall be conclusive if not objected to in writing within ten days.

The firm supplements this by providing similar protection for the remainder of the cash and/or securities that we hold on your behalf. This statement shall be conclusive if not objected to in writing within ten days. In reviewing your account, should be directed to the office serving your account. We recommend that you retain

# OPPENHEIMER

**Oppenheimer & Co. Inc.**
125 Broad Street
New York, NY 10004
(212) 668-8000
Member of All Principal Exchanges

## STATEMENT OF ACCOUNT

Account Number: █████
For the Period: 10/01/06 - 10/31/06

BETTE M GROSSMAN



SIPC

Tax ID Number:  ON FILE
Last Statement: 09/30/06
Page    1 of   4

Office Serving Your Account
200 PARK AVENUE 24TH FL
NEW YORK, NY 10166

Financial Advisor
SOOS ERIC B - KF5
(800) 620-6726
Internet Address:     www.opco.com

## News and Information

*Items for Attention*
*Assets maturing during the next 60 days appear at the end of the statement.*

*With the end of the year fast approaching, investors should review their holdings in light of gains and losses already realized during the year. Talk to your Financial Advisor about adjusting your positions, the wash sales rules, and the impact any transactions may have on your tax planning.*

## Portfolio Summary

|  | This Period 10/31/06 | Previous Period 09/30/06 | Estimated Annual Income |
|---|---|---|---|
| Money Market Funds | $36,585.47 | $36,271.60 | $914.63 |
| Municipal Bonds | 330,321.40 | 329,317.35 | 0.00 |
| Cash Equivalents | 100,000.00 | 100,000.00 | 0.00 |
| **Total Asset Value** | **$466,906.87** | **$465,588.95** | **$914.63** |

*Note: Value of unpriced securities and accrued interest is not reflected in Total Asset Value.*

## Cash Activity Summary

|  | This Period |
|---|---|
| Total Income | $313.87 |
| Net Cash Flow | $313.87 |

## Income Summary

| Reportable | This Period | Year to Date |
|---|---|---|
| Total Reportable | $.00 | $.00 |
| **Non-Reportable** |  |  |
| Municipal Interest | $242.56 | $2,436.68 |
| Money Fund Div Non Taxable | 71.31 | 371.32 |
| **Total Non-Reportable** | **$313.87** | **$2,808.00** |

# OPPENHEIMER

Oppenheimer & Co. Inc.
125 Broad Street
New York, NY 10004
(212) 668-8000
Member of All Principal Exchanges

## STATEMENT OF ACCOUNT

**SIPC**

| | |
|---|---|
| Page | 2 of 4 |
| Account Number | |
| Financial Advisor | SOOS ERIC B - KF5 |
| Period Ending | 10/31/06 |

BETTE M GROSSMAN

## Portfolio Holdings

Some prices, current values and income estimates may be approximations, resulting in gains and losses not being accurately reflected. Unrealized gains and/or losses are computed from the supplied cost basis data and may not be accurate for tax reporting purposes. Items for which a cost basis was not available as of the statement period ending date are indicated by the symbol N/A. The total gains and/ or losses do not reflect positions which we do not have cost information. Please contact your Financial Advisor if you believe any cost basis related data is inaccurate or if you require additional information.

### Money Market Funds

| Description | Account Type | Quantity | Symbol | Rating/CUSIP | Unit Cost | Current Price | Total Cost Basis | Current Value | Unrealized Gain/(Loss) | Inc. Rate or Yield | Annual Income | Portfolio Percent |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ADVANTAGE NY TAX EXEMPT LIQ FD | CASH | 36,585.47 | CYEXX | | 1.00 | 1.00 | 36,585.47 | 36,585.47 | | 2.50% | 914 | 7.84 |
| TOTAL MONEYMARKET FUNDS............... | | | | | | | 36,585.47 | 36,585.47 | | | 914 | 7.84 |

### Fixed Income
*Municipal Bonds in Maturity Date Sequence*

| Description | Account Type | Quantity | Rating/CUSIP | Unit Cost | Current Price | Total Cost Basis | Current Value | Unrealized Gain/(Loss) | Inc. Rate or Yield | Annual Income | Portfolio Percent |
|---|---|---|---|---|---|---|---|---|---|---|---|
| NEW YORK N Y NY SFSA DUE 02/01/07 REG UGO NON-CALL | CASH | 15,000 | AAA /AAA 649664VV8 | 66.9257 | 99.14 | 10,038.85 | 14,871.00 | 4,832 | N/A | | 3.19 |
| NEW YORK N Y NY DUE 08/01/07 B/E UGO NON-CALL ETM | CASH | 150,000 | NA /NR 649654EY2 | N/A | 97.379 | N/A | 146,068.50 | N/A | N/A | | 31.28 |
| WASHINGTON ST PUB PWR SUPPLY S WA DUE 07/01/08 REG REV ZCPN NON-CALL | CASH | 75,000 | AAA /AA- 939630GR0 | N/A | 93.969 | N/A | 70,476.75 | N/A | N/A | | 15.09 |
| GEORGIA MUN ELEC AUTH PWR REV GA BIG DUE 01/01/09 REG REV ZCPN NON-CALL | CASH | 50,000 | AAA /AAA 373540C76 | N/A | 91.855 | N/A | 45,927.50 | N/A | N/A | | 9.84 |
| NEW YORK ST LOC GOVT ASSISTANC NY DUE 04/01/10 B/E ZCPN NON-CALL | CASH | 10,000 | AA3 /AA- 649876CA5 | 60.5925 | 86.984 | 6,059.25 | 8,698.40 | 2,639 | N/A | | 1.86 |

# OPPENHEIMER



BETTE M GROSSMAN

Oppenheimer & Co. Inc.
125 Broad Street
New York, NY 10004
(212) 668-8000
Member of All Principal Exchanges

## STATEMENT OF ACCOUNT

Page 3 of 4

Account Number 4

Financial Advisor SOOS ERIC B - KF5

Period Ending 10/31/06

SIPC

### Municipal Bonds in Maturity Date Sequence

| Description | Account Type | Quantity | Rating/ CUSIP | Unit Cost | Current Price | Total Cost Basis | Current Value | Unrealized Gain/(Loss) | Inc. Rate or Yield | Annual Income | Portfolio Percent |
|---|---|---|---|---|---|---|---|---|---|---|---|
| ILLINOIS EDL FACS AUTH REVS IL DUE 07/01/14 REG REV ZCPN NON-CALL ETM | CASH | 50,000 | A1 /NR 452001FN5 | N/A | 63.628 | N/A | 31,814.00 | N/A | N/A | | 6.81 |
| ILLINOIS EDL FACS AUTH REVS IL DUE 07/01/14 REG REV ZCPN NON-CALL PREREF | CASH | 25,000 | A1 /NR 452001FP0 | N/A | 49.861 | N/A | 12,465.25 | N/A | N/A | | 2.67 |
| SUB-TOTAL MUNICIPAL BONDS | | 375,000 | | | | 16,098.10 | 330,321.40 | 7,471 | | | 70.74 |
| TOTAL FIXED INCOME | | 375,000 | | | | 16,098.10 | 330,321.40 | 7,471 | | | 70.74 |

### Cash Equivalents

| Description | Account Type | Quantity | CUSIP # | Unit Cost | Current Price | Total Cost Basis | Current Value | Unrealized Gain/(Loss) | Inc. Rate or Yield | Annual Income | Portfolio Percent |
|---|---|---|---|---|---|---|---|---|---|---|---|
| BLACKROCKMUNIHOLDINGS N Y INS TAX FREE PFD AUC SER E S&P AAA MOODYSAAA | CASH | 4 | 092550601 | 25,000.00 | 25,000.00 | 100,000.00 | 100,000.00 | 0 | 0 | | 21.42 |
| TOTAL CASH EQUIVALENTS | | | | | | 100,000.00 | 100,000.00 | 0 | | | 21.42 |

| | Total Cost Basis | Current Value | Unrealized Gain/(Loss) | Inc. Rate or Yield | Annual Income | Portfolio Percent |
|---|---|---|---|---|---|---|
| **Total Portfolio Value** | $152,883.57 | $466,806.87 | $7,471 | 0.39 | 914 | 100% |

# OPPENHEIMER

Oppenheimer & Co. Inc.
125 Broad Street
New York, NY 10004
(212) 668-8000
Member of All Principal Exchanges

**STATEMENT OF ACCOUNT**

| | |
|---|---|
| Page | 4 of 4 |
| Account Number | |
| Financial Advisor | SOOS ERIC B - KFS |
| Period Ending | 10/31/06 |

SIPC

## BETTE M GROSSMAN

### Transactions/Activity Detail

| Date | Type | Quantity | Transaction | Description | Price/Entry | Amount | |
|---|---|---|---|---|---|---|---|
| | | | | ** MISCELLANEOUS ACTIVITIES ** | | | |
| 10-03 | CASH | 4 | RECEIVED | BLACKROCK MUNIHLDGS NY INSD FD EXCHANGEAT 1.000000 | AUCTN RT PFD SER E - 7 DAYS XCH | | |
| 10-03 | CASH | -4 | DELIVERED | MUNIHOLDINGS NY INSD I SER E XCH EXCHANGEAT 1.000000 | TUESDAY | | |
| | | | | Net Miscellaneous      Credits/Debits.......... | | $0.00 | CREDIT |

| Date | Type | Quantity | Transaction | Description | Price/Entry | Amount | |
|---|---|---|---|---|---|---|---|
| | | | | ** INCOME ACTIVITIES ** | | | |
| 10-04 | CASH | | INTEREST ON | BLACKROCK MUNIHLDGS NY INSD FD | AUCTN RT PFD SER E- 7 DAYS TUE | 67.12 | CREDIT |
| 10-11 | CASH | | INTEREST ON | BLACKROCK MUNIHLDGS NY INSD FD | AUCTN RT PFD SER E- 7 DAYS TUE | 57.52 | CREDIT |
| 10-18 | CASH | | INTEREST ON | BLACKROCK MUNIHLDGS NY INSD FD | AUCTN RT PFD SER E- 7 DAYS TUE | 60.40 | CREDIT |
| 10-20 | CASH | | DIVIDENDS ON | ADVANTAGE NY TAX EXEMPT LIQ FD | | 71.31 | CREDIT |
| 10-25 | CASH | | INTEREST ON | BLACKROCK MUNIHLDGS NY INSD FD | AUCTN RT PFD SER E- 7 DAYS TUE | 57.52 | CREDIT |
| | | | | Net Income.................. | | $313.87 | CREDIT |

| Date | Type | Quantity | Transaction | Description | Price/Entry | Amount | |
|---|---|---|---|---|---|---|---|
| | | | | ** MONEYFUND ACTIVITIES ** | | | |
| 10-20 | CASH | 71.31 | RECEIVED | ADVANTAGE NY TAX EXEMPT LIQ FD | DIVIDEND SHARES REINVESTED | 71.31 | DEBIT |
| | | | | Total Money Funds Purchased: | | 242.56 | DEBIT |
| | | | | Total Money Funds Redeemed: | | .00 | DEBIT |

The Total Money Funds purchased and redeemed represent the total of automatic daily sweeps into and out of your account as per your standing instructions.

Net Money Fund Cash Activities.............. $313.87 DEBIT

Cash and securities held by us in your client account(s) are protected in two ways. Through our membership in SIPC (Securities Investor Protection Corp), protection is provided up to $500,000, of which as much as $100,000 can be in cash. The firm supplements this by providing similar protection for the remainder of the cash and/or securities up to $75,000,000 that we hold on your behalf.

**** THIS IS THE END OF YOUR STATEMENT. WE THANK YOU FOR BEING A VALUED CLIENT. ****

EXHIBIT 2

**BEFORE THE JUDICIAL PANEL ON**
**MULTIDISTRICT LITIGATION**

IN RE AUCTION RATE SECURITIES    )
BROKER-DEALER LITIGATION    )    MDL DOCKET NO. _____

**MOVANTS' MOTION TO**
**TRANSFER FOR COORDINATION**

    Pursuant to 28 U.S.C. § 1407, Movants[1] hereby move the Judicial Panel on Multidistrict

Litigation to take jurisdiction over thirty-one related cases and transfer them for coordination of

pretrial proceedings to the United States District Court for the Southern District of New York, or,

alternatively, the Northern District of California or any other district the Panel deems

appropriate.

---

[1]    The term "Movants" refers to the plaintiffs from the following thirteen cases, all of whom are represented by the undersigned counsel: (1) *Chandler v. UBS AG, et al.*, Case No. 08-cv-02967 (S.D.N.Y.); (2) *Kraemer v. Deutsche Bank AG, et al.*, Case No. 08-cv-02788 (S.D.N.Y.); (3) *Burton v. Merrill Lynch Corp., et al.*, Case No. 08-cv-03037 (S.D.N.Y.); (4) *Waldman v. Wachovia Corp., et al.*, Case No. 08-cv-02913 (S.D.N.Y.); (5) *Humphrys v. TD Ameritrade Holding Corp., et al.*, Case No. 08-cv-02912 (S.D.N.Y.); (6) *Swanson v. Citigroup, Inc., et al.*, Case No. 08-cv-03139 (S.D.N.Y.); (7) *Jamail v. Morgan Stanley, et al.*, Case No. 08-cv-03178 (S.D.N.Y.); (8) *Oughtred v. E*Trade Financial Corp., et al.*, Case No. 08-cv-03295 (S.D.N.Y.); (9) *Defer LP v. Raymond James Financial, Inc., et al.*, Case No. 08-cv-03449 (S.D.N.Y.); (10) *Van Dyke v. Wells Fargo & Co., et al.*, Case No. 08-cv-01962 (N.D. Cal.); (11) *Vining v. Oppenheimer Holdings, Inc., et al.*, Case No. 08-cv-04435 (S.D.N.Y.); (12) *Brigham v. Royal Bank of Canada, et al.*, Case No. 08-cv-04431 (S.D.N.Y.); and (13) *Bondar v. Bank of America Corp., et al.*, Case No. 08-cv-02599 (N.D. Cal.).

As set forth more fully in the accompanying Brief in Support of Movants' Motion to Transfer for Coordination, transfer under section 1407 is appropriate because:

1.      There are thirty-one pending actions in five different federal district courts arising from the alleged improper marketing of auction rate securities ("ARS");

2.      The plaintiffs in all the cases contend that broker-dealers misrepresented the nature of ARS and failed to disclose material facts about ARS;

3.      Because they arise from the same alleged wrongful conduct, all of the actions involve common questions of fact, and they will require overlapping discovery;

4.      The majority of the actions plead the same legal claims, and will involve common questions of law; and

5.      The majority of the actions are pleaded as class actions under Fed. R. Civ. P. 23. Because of these unifying characteristics, the Panel should transfer the underlying thirty-one cases for pre-trial coordination.

Movants request that the Panel transfer the actions to the United States District Court for the Southern District of New York because most of the thirty-one pending cases are already on file in that jurisdiction, that district is convenient for the parties and witnesses because several of the defendants maintain their executive offices there, and that district is easily accessible by various means of transportation. Alternatively, should the Panel find that docket congestion or litigation expense of the Southern District of New York make transfer to another district desirable, Movants respectfully suggest transfer to the Hon. Jeffrey S. White of the Northern District of California, or any other judge the Panel deems appropriate.

WHEREFORE, Movants respectfully request that the Panel grant their Motion to Transfer for Coordination, order the thirty-one underlying cases be transferred to the United

States District Court for the Southern District of New York for coordinated pre-trial proceedings, order that future "tag along" actions also be transferred to that jurisdiction for coordinated pre-trial proceedings, and grant any other relief the Panel deems just and proper.

Dated: June 12, 2008

**STUEVE SIEGEL HANSON LLP**

Norman E. Siegel
Matthew L. Dameron
460 Nichols Road, Suite 200
Kansas City, MO 64112
(816) 714-7100
(816) 714-7101 (fax)
siegel@stuevesiegel.com
dameron@stuevesiegel.com

**GIRARD GIBBS LLP**
Daniel C. Girard
Jonathan K. Levine
Aaron M. Sheanin
601 California St, Suite 1400
San Francisco, CA 94108
(415) 981-4800
(415) 981-4846 (fax)
dcg@girardgibbs.com
jkl@girardgibbs.com
ams@girardgibbs.com

**SEEGER WEISS LLP**
Christopher Adam Seeger
Stephen A. Weiss
David R. Buchanan
One William Street, 10th Floor
New York, NY 10004
(212) 584-0757
(212) 584-0799 (fax)
cseeger@seegerweiss.com
sweiss@seegerweiss.com
dbuchanan@seegerweiss.com

**BEFORE THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

IN RE AUCTION RATE SECURITIES    )
BROKER-DEALER LITIGATION    )    MDL DOCKET NO. _____

**BRIEF IN SUPPORT OF MOVANTS'
MOTION TO TRANSFER FOR COORDINATION**

"Auction rate securities" are municipal bonds, corporate bonds and preferred stocks with interest rates or dividend yields that were conceived to be reset through auctions every 7, 14, 28 or 35 days. Auction rate bonds are usually issued with maturities of 30 years, but the maturities can range from five years to perpetuity. Auction rate securities ("ARS") were initially sold exclusively to corporate money managers and institutional investors. Beginning in March 2005, changes in accounting standards made ARS less attractive to corporations. In order to find new buyers for ARS, the broker-dealers who underwrite ARS and manage the periodic reset auctions began marketing ARS to individual investors as an alternative to money market funds. ARS were

represented as safe, highly liquid cash management vehicles, as demonstrated by the fact that broker-dealers typically listed ARS as "cash equivalents" on periodic statements sent to customers. Some issued checkbooks to their customers to facilitate redemption.

The periodic auctions managed by the broker-dealers were intended to function as "Dutch Auctions." In practice, however, the broker-dealers systematically intervened in the auctions to ensure liquidity and manage interest rates.[1] By purchasing for their own accounts securities that would have otherwise gone unsold at auction, the broker-dealers prevented auctions from "failing." By manipulating the ARS resale market in this manner, the broker-dealers were able to maintain their coveted business of managing auctions and underwriting new issuances of ARS.

In mid-February 2008, the major broker-dealers, having intervened in auctions to prevent auction failures, collectively and simultaneously "withdrew their support" for the ARS market, refusing to meet customer demands to liquidate positions in ARS. The resulting failures of ARS auctions have led to the complete collapse of the ARS market. ARS holders who were promised a money market alternative are unable to recover their deposits. While some issuers of ARS have acted to redeem the securities, most have announced they have no plans to do so.

Following the collapse of the auction rate market, owners of ARS have filed over thirty lawsuits alleging that the ARS broker-dealers violated federal securities laws in

---

[1]     In 2006 and 2007, the Securities and Exchange Commission issued cease-and-desist orders against fourteen broker-dealers and three auction agents involved in auction rate securities. *See In the Matter of Bear, Sterns & Co. Inc., et al*, Securities Act of 1933 Release No. 8684, Administrative Proceeding File No. 3-12310, 2006 SEC LEXIS 1246 (May 31, 2006); *In the Matter of Deutsche Bank Trust Co. Americas, et al.*, Securities Act of 1933 Release No. 8767, Administrative Proceeding File No. 3-12526 (January 9, 2007). Both cease-and-desist orders acknowledge that broker-dealers and auction agents intervened in auctions to prevent auction failures, among other things. *In the Matter of Bear, Sterns*, 2006 SEC LEXIS 1246 at *13; *In the Matter of Deutsche Bank,* Release No. 8767, Section III(C)(2)(b)(1).

promoting sales of ARS and managing ARS auctions. Pursuant to 28 U.S.C. § 1407, plaintiffs in several of those cases now move to transfer the cases for purposes of coordinating proceedings against all defendants for pretrial purposes.

## THE ARS LITIGATION

The following table (referred to below as "Table 1") shows the ARS cases presently pending against each corporate defendant family, and groups those cases by corporate affiliation.[2]

| CORPORATE FAMILY | CASE NAME | COURT |
|---|---|---|
| UBS | Chandler v. UBS AG, et al. | S.D. New York |
| | Sanchez v. UBS AG, et al.[3] | S.D. New York |
| | Bonnist v. UBS AG, et al. | S.D. New York |
| | Kassover v. UBS AG, et al. | S.D. New York |
| | Parnass v. UBS AG, et al. | C.D. California |
| DEUTSCHE BANK | Kraemer v. Deutsche Bank AG, et al. | S.D. New York |
| MERRILL LYNCH | Burton v. Merrill Lynch Corp., et al. | S.D. New York |
| | Stanton v. Merrill Lynch & Co., et al. | S.D. New York |
| WACHOVIA | Waldman v. Wachovia Corp. et al. | S.D. New York |
| TD AMERITRADE | Humphrys v. TD Ameritrade Holding Corp., et al. | S.D. New York |
| | Silverstein v. TD Ameritrade Holding Corp., et al. | D. Nebraska (transfer to S.D. New York ordered on June 10, 2008) |

---

[2]     Movants' Schedule of Actions is attached hereto as Exhibit 1.

[3]     *Sanchez* and *Chandler* have already been consolidated into one action by court order. *See Sanchez* Docket Sheet (Exhibit 3) at Doc. # 9; *Chandler* Docket Sheet (Exhibit 2) at Doc. # 13.

| CITIGROUP SMITH BARNEY | Swanson v. Citigroup, Inc., et al. | S.D. New York |
|---|---|---|
| | LHB Ins. Brokerage, Inc. v. Citigroup, Inc., et al. | S.D. New York |
| | Finn v. Smith Barney, et al. | S.D. New York |
| | Stockhamer, et al. v. Citigroup Inc., et al. | S.D. New York |
| | Wedgewood Tacoma LLC v. Citigroup Inc., et al. | S.D. New York |
| | Ghalayini v. Citigroup Inc., et al.[4] | S.D. New York |
| MORGAN STANLEY | Jamail v. Morgan Stanley, et al. | S.D. New York |
| | Miller v. Morgan Stanley & Co., Inc. | S.D. New York |
| JP MORGAN CHASE | Ciplet v. JP Morgan Chase, et al. | S.D. New York |
| E*TRADE | Oughtred v. E*Trade Financial Corp., et al. | S.D. New York |
| RAYMOND JAMES | Defer LP v. Raymond James Financial, Inc., et al. | S.D. New York |
| WELLS FARGO | Van Dyke, et al. v. Wells Fargo & Co., et al. | N.D. California |
| | Al-Thani v. Wells Fargo & Co., et al. | N.D. California |
| | Walters, et al. v. Wells Fargo & Co., et al. | W.D. Texas |
| SUNTRUST | Zisholtz v. Sun Trust Banks, Inc., et al. | N.D. Georgia |
| OPPENHEIMER | Grossman, et al. v. Oppenheimer & Co., et al. | S.D. New York |
| | Vining v. Oppenheimer Holdings, Inc., et al. | S.D. New York |
| GOLDMAN SACHS | Milch v. The Goldman Sachs Group, Inc., et al. | S.D. New York |
| ROYAL BANK OF CANADA | Brigham v. Royal Bank of Canada, et al. | S.D. New York |
| BANK OF AMERICA | Bondar v. Bank of America Corp., et al. | N.D. California |

---

[4]     The Complaint for *Ghalayini* was not available on the Southern District of New York's ECF program when Movants compiled the exhibits in support of their Motion. *See Ghalayini* Docket Sheet (Exhibit 17).

The undersigned counsel represent Plaintiffs in thirteen of the actions listed above: *Chandler, Kraemer, Burton, Waldman, Humphrys, Swanson, Jamail, Oughtred, Defer LP, Van Dyke, Vining, Brigham* and *Bondar*.

### The ARS Cases Share a Similar Posture.

All of the cases in Table 1 are in a similar procedural posture, having been filed in the last few months. Other than issuing preliminary scheduling orders and handling other routine matters, no court has issued any rulings affecting the merits of the litigation in any of the cases identified in Table 1. Indeed, the parties have not submitted any substantive motions to the courts, with the exception of motions for lead plaintiff in various matters as mandated by the Private Securities Litigation Reform Act ("PSLRA"), and a motion to dismiss filed by the defendant in *Zisholtz*. The *Zisholtz* plaintiff has not yet filed his response to the motion, and there is no indication the court has expended resources on the motion. *See Zisholtz* Docket Sheet (Exhibit 26). Because all of the cases identified for transfer herein were filed at or around the same time period, they are all in preliminary procedural stages, no particular case has materially advanced any further than the others, they all share a similar scheduling track, and no court has expended considerable time or resources on any particular case.[5]

---

[5]     *Chandler* Docket Sheet (Exhibit 2); *Sanchez* Docket Sheet (Exhibit 3); *Bonnist* Docket Sheet (Exhibit 4); *Kassover* Docket Sheet (Exhibit 5); *Kraemer* Docket Sheet (Exhibit 6); *Burton* Docket Sheet (Exhibit 7); *Stanton* Docket Sheet (Exhibit 8); *Waldman* Docket Sheet (Exhibit 9); *Humphrys* Docket Sheet (Exhibit 10); *Silverstein* Docket Sheet (Exhibit 11); *Swanson* Docket Sheet (Exhibit 12); *LHB Ins. Brokerage* Docket Sheet (Exhibit 13); *Finn* Docket Sheet (Exhibit 14); *Stockhamer* Docket Sheet (Exhibit 15); *Wedgewood* Docket Sheet (Exhibit 16); *Ghalayini* Docket Sheet (Exhibit 17); *Jamail* Docket Sheet (Exhibit 18); *Miller* Docket Sheet (Exhibit 19); *Ciplet* Docket Sheet (Exhibit 20); *Oughtred* Docket Sheet (Exhibit 21); *Defer* Docket Sheet (Exhibit 22); *Van Dyke* Docket Sheet (Exhibit 23); *Al-Thani* Docket Sheet (Exhibit 24); *Walters* Docket Sheet (Exhibit 25); *Zisholtz* Docket Sheet (Exhibit 26); *Grossman* Docket Sheet (Exhibit 27); *Vining* Docket Sheet (Exhibit 28); *Milch* Docket Sheet (Exhibit 29); *Brigham* Docket Sheet (Exhibit 30); *Bondar* Docket Sheet (Exhibit 31); *Parnass* Docket Sheet (Exhibit 32).

Like the courts presiding over the subject actions, none of the parties have expended substantial resources or time litigating any of the cases because the parties have not engaged in any discovery.[6]  Although the plaintiffs have filed motions seeking appointment of lead plaintiffs under the PSLRA in a number of cases, only one court has ruled on that issue – on June 11, 2008, the Court in *Oughtred v. E\*Trade Fin. Corp.* appointed Movants' Counsel as Lead Counsel.[7]  Where there are multiple plaintiffs seeking lead plaintiff status in a particular case, none of those motions are ripe for consideration because they are not fully briefed.

### The ARS Cases Share Common Factual Allegations and Types of Parties.

In addition to sharing a common procedural posture, all of the cases share common factual allegations.  Plaintiffs allege that defendants uniformly marketed ARS as cash-equivalent, highly liquid investments suitable for short-term investing, while failing to inform their customers of the extent of their role in sustaining the ARS market, of adverse developments affecting the viability of ARS, and other facts material to a decision to invest in ARS.[8]  Plaintiffs further allege that defendants acted in concert to

---

[6]     This contrasts with the exceptional amount of time and resources expended collectively by counsel for Movants in connection with their pre- and post-filing investigation, including extensive telephone and in-person interviews with many hundreds of individuals whose assets have been immobilized by the auction rate market collapse.

[7]     Movants have sought or will seek appointment as lead plaintiffs in most of the pending cases and expect that these motions may be resolved during the pendency of this Motion.

[8]     *Chandler* Complaint (Exhibit 2) at ¶ 33; *Sanchez* Complaint (Exhibit 3) at ¶ 3; *Bonnist* Complaint (Exhibit 4) at ¶ 36; *Kassover* Complaint (Exhibit 5) at ¶ 24; *Kraemer* Complaint (Exhibit 6) at ¶ 32; *Burton* Complaint (Exhibit 7) at ¶ 32; *Stanton* Complaint (Exhibit 8) at ¶ 3; *Waldman* Complaint (Exhibit 9) at ¶ 32; *Humphrys* Complaint (Exhibit 10) at ¶ 32; *Silverstein* Complaint (Exhibit 11) at ¶ 3; *Swanson* Complaint (Exhibit 12) at ¶ 33; *LHB Ins. Brokerage* Complaint (Exhibit 13) at ¶ 3; *Wedgewood* Complaint (Exhibit 16) at ¶ 3; *Jamail* Complaint (Exhibit 18) at ¶ 32; *Miller* Complaint (Exhibit 19) at ¶ 3; *Ciplet* Complaint (Exhibit 20) at ¶ 2; *Oughtred* Complaint (Exhibit 21) at ¶ 32; *Defer* Complaint (Exhibit 22) at ¶ 33; *Van Dyke* Complaint (Exhibit 23) at ¶ 32; *Al-Thani* Complaint (Exhibit 24) at ¶ 14; *Walters* Complaint (Exhibit 25) at ¶ 7; *Zisholtz* Complaint (Exhibit 26) at ¶ 3; *Grossman* Complaint (Exhibit 27) at ¶ 29; *Vining* Complaint (Exhibit 28) at ¶ 33; *Milch* Complaint (Exhibit 29) at ¶ 2; *Brigham* Complaint (Exhibit 30) at ¶ 33; *Bondar* Complaint (Exhibit 31) at ¶ 33; *Parnass* Complaint (Exhibit 32) at ¶ 12.

manipulate the ARS market by intervening to prevent auction failures until their interests were no longer served by doing so, when they simultaneously withdrew their support, triggering a complete collapse of the ARS market.

In addition to common factual allegations, all the auction rate cases identified in Table 1 share common categories of parties, in that all plaintiffs are investors who purchased ARS, and the defendants are broker-dealers (or employees of the broker-dealers) who sold ARS.[9]

### The Auction Rate Cases Share Common Legal Claims and Theories.

The ARS cases share several overlapping legal theories. For example, the vast majority of the cases assert violations of section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5.[10] Similarly, several of the cases assert violations of section 20(a)

---

[9]      *Chandler* Complaint (Exhibit 2) at ¶¶ 8-11; *Sanchez* Complaint (Exhibit 3) at ¶¶ 14-17; *Bonnist* Complaint (Exhibit 4) at ¶¶ 10-13; *Kassover* Complaint (Exhibit 5) at ¶¶ 10-12; *Kraemer* Complaint (Exhibit 6) at ¶¶ 8-10; *Burton* Complaint (Exhibit 7) at ¶¶ 8-10; *Stanton* Complaint (Exhibit 8) at ¶¶ 14-16; *Waldman* Complaint (Exhibit 9) at ¶¶ 8-10; *Humphrys* Complaint (Exhibit 10) at ¶¶ 8-10; *Silverstein* Complaint (Exhibit 11) at ¶¶ 14-16; *Swanson* Complaint (Exhibit 12) at ¶¶ 8-11; *LHB Ins. Brokerage* Complaint (Exhibit 13) at ¶¶ 14-16; *Finn* Complaint (Exhibit 14) at ¶¶ 5-7; *Stockhamer* Complaint (Exhibit 15) at ¶¶ 10-12; *Wedgewood* Complaint (Exhibit 16) at ¶¶ 12-15; *Jamail* Complaint (Exhibit 18) at ¶¶ 8-10; *Miller* Complaint (Exhibit 19) at ¶¶ 14-15; *Ciplet* Complaint (Exhibit 20) at ¶¶ 9-11; *Oughtred* Complaint (Exhibit 21) at ¶¶ 8-10; *Defer* Complaint (Exhibit 22) at ¶¶ 8-11; *Van Dyke* Complaint (Exhibit 23) at ¶¶ 8-10; *Al-Thani* Complaint (Exhibit 24) at ¶¶ 3-8; *Walters* Complaint (Exhibit 25) at ¶¶ 3-6; *Zisholtz* Complaint (Exhibit 26) at ¶¶ 14-16; *Grossman* Complaint (Exhibit 27) at ¶¶ 9-13; *Vining* Complaint (Exhibit 28) at ¶¶ 8-11; *Milch* Complaint (Exhibit 29) at ¶¶ 8-9; *Brigham* Complaint (Exhibit 30) at ¶¶ 8-11; *Bondar* Complaint (Exhibit 31) at ¶¶ 8-11; *Parnass* Complaint (Exhibit 32) at ¶¶ 1-2.

[10]      *Chandler* Complaint (Exhibit 2) at ¶¶ 47-56; *Sanchez* Complaint (Exhibit 3) at ¶¶ 75-81; *Bonnist* Complaint (Exhibit 4) at ¶¶ 49-58; *Kraemer* Complaint (Exhibit 6) at ¶¶ 46-55; *Burton* Complaint (Exhibit 7) at ¶¶ 46-55; *Stanton* Complaint (Exhibit 8) at ¶¶ 73-79; *Waldman* Complaint (Exhibit 9) at ¶¶ 46-55; *Humphrys* Complaint (Exhibit 10) at ¶¶ 46-55; *Silverstein* Complaint (Exhibit 11) at ¶¶ 72-78; *Swanson* Complaint (Exhibit 12) at ¶¶ 47-56; *LHB Ins. Brokerage* Complaint (Exhibit 13) at ¶¶ 75-81; *Finn* Complaint (Exhibit 14) at ¶¶ 19-40; *Wedgewood* Complaint (Exhibit 16) at ¶¶ 73-84; *Jamail* Complaint (Exhibit 18) at ¶¶ 46-55; *Miller* Complaint (Exhibit 19) at ¶¶ 72-78; *Ciplet* Complaint (Exhibit 20) at ¶¶ 53-63; *Oughtred* Complaint (Exhibit 21) at ¶¶ 46-55; *Defer* Complaint (Exhibit 22) at ¶¶ 47-56; *Van Dyke* Complaint (Exhibit 23) at ¶¶ 45-54; *Al-Thani* Complaint (Exhibit 24) at ¶¶ 30-36; *Walters* Complaint (Exhibit 25) at ¶¶ 13-20; *Zisholtz* Complaint (Exhibit 26) at ¶¶ 74-80; *Grossman* Complaint (Exhibit 27) at ¶¶ 50-59; *Vining* Complaint (Exhibit 28) at ¶¶ 47-56; *Milch* Complaint (Exhibit 29) at ¶¶ 46-55; *Brigham* Complaint (Exhibit 30) at ¶¶ 47-56; *Bondar* Complaint (Exhibit 31) at ¶¶ 47-56.

of the 1934 Act.[11]    Although a handful of the Complaints seek additional remedies beyond section 10(b) and section 20(a) claims, the ancillary claims are still premised on the same underlying facts and alleged wrongful conduct.

The vast majority of the cases in Table 1 also plead their claims as class actions under Fed. R. Civ. P. 23.[12]  To the limited extent certain complaints plead claims only on behalf of the individual plaintiff named in the complaint, those complaints also pursue section 10(b) and section 20(a) claims, as well as additional legal claims premised on state law.[13]

### ARGUMENT

Section 1407 authorizes transfer and coordination of proceedings pending in different courts where there are "common questions of fact" and transfer "will be for the

---

[11]     *Chandler* Complaint (Exhibit 2) at ¶¶ 57-59; *Sanchez* Complaint (Exhibit 3) at ¶¶ 82-85; *Bonnist* Complaint (Exhibit 4) at ¶¶ 59-61; *Kraemer* Complaint (Exhibit 6) at ¶¶ 56-58; *Burton* Complaint (Exhibit 7) at ¶¶ 56-58; *Stanton* Complaint (Exhibit 8) at ¶¶ 80-83; *Waldman* Complaint (Exhibit 9) at ¶¶ 56-58; *Humphrys* Complaint (Exhibit 10) at ¶¶ 56-58; *Silverstein* Complaint (Exhibit 11) at ¶¶ 79-82; *Swanson* Complaint (Exhibit 12) at ¶¶ 57-60; *LHB Ins. Brokerage* Complaint (Exhibit 13) at ¶¶ 82-85; *Wedgewood* Complaint (Exhibit 16) at ¶¶ 85-87; *Jamail* Complaint (Exhibit 18) at ¶¶ 56-58; *Ciplet* Complaint (Exhibit 20) at ¶¶ 64-68; *Oughtred* Complaint (Exhibit 21) at ¶¶ 56-58; *Defer* Complaint (Exhibit 22) at ¶¶ 57-59; *Van Dyke* Complaint (Exhibit 23) at ¶¶ 55-57; *Al-Thani* Complaint (Exhibit 24) at ¶¶ 43-47; *Walters* Complaint (Exhibit 25) at ¶¶ 26-29; *Zisholtz* Complaint (Exhibit 26) at ¶¶ 81-84; *Grossman* Complaint (Exhibit 27) at ¶¶ 60-65; *Vining* Complaint (Exhibit 28) at ¶¶ 57-59; *Milch* Complaint (Exhibit 29) at ¶¶ 56-58; *Brigham* Complaint (Exhibit 30) at ¶¶ 57-59; *Bondar* Complaint (Exhibit 31) at ¶¶ 57-59.

[12]     *Chandler* Complaint (Exhibit 2) at ¶¶ 13-19; *Sanchez* Complaint (Exhibit 3) at ¶¶ 19-24; *Bonnist* Complaint (Exhibit 4) at ¶¶ 15-21; *Kassover* Complaint (Exhibit 5) at ¶¶ 14-19; *Kraemer* Complaint (Exhibit 6) at ¶¶ 12-18; *Burton* Complaint (Exhibit 7) at ¶¶ 12-18; *Stanton* Complaint (Exhibit 8) at ¶¶ 17-22; *Waldman* Complaint (Exhibit 9) at ¶¶ 12-18; *Humphrys* Complaint (Exhibit 10) at ¶¶ 12-18; *Silverstein* Complaint (Exhibit 11) at ¶¶ 18-23; *Swanson* Complaint (Exhibit 12) at ¶¶ 13-19; *LHB Ins. Brokerage* Complaint (Exhibit 13) at ¶¶ 18-23; *Stockhamer* Complaint (Exhibit 15) at ¶¶ 13-18; *Wedgewood* Complaint (Exhibit 16) at ¶¶ 17-23; *Jamail* Complaint (Exhibit 18) at ¶¶ 12-18; *Miller* Complaint (Exhibit 19) at ¶¶ 16-21; *Ciplet* Complaint (Exhibit 20) at ¶¶ 13-18; *Oughtred* Complaint (Exhibit 21) at ¶¶ 12-18; *Defer* Complaint (Exhibit 22) at ¶¶ 13-19; *Van Dyke* Complaint (Exhibit 23) at ¶¶ 12-18; *Zisholtz* Complaint (Exhibit 26) at ¶¶ 18-23; *Grossman* Complaint (Exhibit 27) at ¶¶ 43-49; *Vining* Complaint (Exhibit 28) at ¶¶ 13-19; *Milch* Complaint (Exhibit 29) at ¶¶ 11-18; *Brigham* Complaint (Exhibit 30) at ¶¶ 13-19; *Bondar* Complaint (Exhibit 31) at ¶¶ 13-19; *see also Parnass* Complaint (Exhibit 32) at ¶¶ 4-8 (purporting to allege an opt-out class action under California Code of Civil Procedure § 382).

[13]     *See Walters* Complaint (Exhibit 25); *Finn* Complaint (Exhibit 14); *Al-Thani* Complaint (Exhibit 24).

convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a).  "The objective of transfer is to eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save the time and effort of the parties, the attorneys, the witnesses, and the courts."  MANUAL FOR COMPLEX LITIGATION (FOURTH) § 20.131 (2004) (citing *In re Plumbing Fixture Cases*, 298 F. Supp. 484 (J.P.M.L. 1968)).  For the reasons set forth below, the ARS litigation is particularly appropriate for transfer and coordination under section 1407.

### *The ARS Cases Involve Common Questions of Fact and Law.*

Given the plaintiffs' allegations of pervasive manipulation in the offer and sale of ARS, there can be little doubt that common questions of fact and law will dominate the underlying cases.

Common questions of fact that are universal to all defendants in all actions identified herein include, but are not limited to:

- how the auctions functioned, including the process by which bids were submitted, and the extent to which defendants deviated from their purported auction procedures;

- whether the defendants either individually or jointly affirmatively misrepresented and/or omitted material facts related to ARS;

- whether the defendants either individually or jointly manipulated and artificially inflated the market for ARS; and

- whether the defendants expressly or tacitly agreed to support the ARS market and prevent failed auctions, and eventually agreed to discontinue their support for the ARS market in February 2008, thereby causing a collapse of the market.

These and other factual questions are common to all the defendants, and coordinating the cases in a single district will facilitate the efficient resolution of these questions while minimizing the risk of inconsistent rulings.

Similarly, there are questions of law that are common to all the ARS cases identified in Table 1, including (1) the applicability of section 10(b) and Rule 10b-5 of the Exchange Act to plaintiffs' claims; (2) the applicability of section 20(a) of the Exchange Act to plaintiffs' claims; and (3) the applicability of the Investment Advisor's Act; and (4) the applicability of various defenses to plaintiffs' claims. Additionally, a critical issue in many of the cases will be whether plaintiffs' claims satisfy the requirements of Fed. R. Civ. 23 – an issue that is particularly well-suited for coordinated treatment given the disarray that would emanate from inconsistent rulings on that point. Movants have plainly demonstrated common questions of fact and law, and transfer under section 1407 is appropriate.[14]

To the limited extent they exist, variations in legal theories or parties do not defeat transfer under section 1407. The Panel has consistently granted requests for transfer even where the underlying cases were brought against varying defendants under different legal theories. *See In re Kugel Mesh*, 493 F. Supp. 2d at 1371 (centralizing cases involving different types of defects and different causes of action against different defendants); *In re Janus Mutual Funds Investment Litig.*, 310 F. Supp. 2d 1359 (J.P.M.L. 2004) (centralizing cases alleging market timing/late trading against six different mutual fund families into one proceeding under section 1407, even though the non-moving

---

[14]    Movants' burden of demonstrating common questions of fact and law is not a difficult standard to satisfy. "Transfer under Section 1407 *does not require* a complete identity or *even a majority of common factual or legal issues* as a prerequisite to transfer." *In re Kugel Mesh Hernia Patch Products Liability Litig.*, 493 F. Supp. 2d 1371, 1373 (J.P.M.L. 2007) (emphasis added).

parties requested fund-specific centralization based on "unique questions of fact relating to each mutual fund family"); *In re Immunex Corp. Average Wholesale Price Litig.*, 201 F. Supp. 2d 1378 (J.P.M.L. 2002) (centralizing cases against different pharmaceutical companies based on fraudulent marketing into one coordinated proceeding); *In re Multi-Piece Rims Products Liability Litig.*, 464 F. Supp. 969 (J.P.M.L. 1979) (centralizing cases alleging defective tire rims against different defendants based on common facts and evidence within the industry, including the engineering principles underlying the design of the rims).

The Panel's holdings in *Janus* and *Immunex* are especially instructive in the context of the ARS litigation. As in the ARS cases, both *Janus* and *Immunex* involved allegations of industry-wide misconduct in business and financial markets.

In *Janus*, the plaintiffs alleged that six different families of mutual funds engaged in improper market timing or late trading. The mutual fund families opposed coordination in a single proceeding and instead asserted that coordination should have been conducted on a fund-by-fund basis because "the presence of unique questions of fact relating to each mutual fund family should produce a different result." *In re Janus*, 310 F. Supp. 2d at 1361.

The Panel rejected this argument, noting that "all actions can be expected to focus on similar mutual fund trading practices and procedures" and that "[r]esolution of overlapping issues, concerning similar conduct in the mutual fund industry, will be streamlined." *Id.* (internal citation omitted). To the extent variations may exist, the Panel held:

> [T]ransfer to a single district under section 1407 has the salutary effect of placing all mutual fund market timing/late trading actions before one court which can formulate a pretrial program that:
>
> (1) allows pretrial proceedings with respect to any non-common issues to proceed concurrently with pretrial proceedings on common issues; and
>
> (2) ensures that pretrial proceedings will be conducted in a manner leading to the just and expeditious resolution of all actions to the overall benefit of the parties.
>
> We note that the . . . transferee court can employ any number of pretrial techniques – such as establishing separate discovery and/or motion tracks for each mutual fund family and/or separate tracks for the different types of actions involved – to efficiently manage this litigation.  In any event, we leave the extent and manner of coordination or consolidation of these . . . claims . . . to the discretion of the transferee court.

*Id.* (citing *In re Multi-Piece*, 464 F. Supp. at 974).

The lesson from *Janus* is that allegations of industry-wide misconduct – and the common questions of fact that relate to those allegations – can form the basis of a centralized proceeding under section 1407.  Where non-common issues or parties are present, the Panel leaves it to the discretion of the transferee court to craft a suitable pre-trial discovery plan to manage those distinguishing characteristics as the judge sees fit.

Like *Janus*, the allegations in *Immunex* were premised on an alleged industry-wide practice, this time by pharmaceutical companies to inflate the average wholesale price of their Medicare covered prescription drugs in order to inflate the sales of the drugs and thereby boost the companies' profits.  The defendants in *Immunex* argued that coordination should be on a company-by-company basis because "the presence of unique questions of fact relating to each pharmaceutical defendant should produce a different result in order to avoid an unwieldy situation."  *In re Immunex*, 201 F. Supp. 2d at 1380. Relying on the same language cited in the *Janus* opinion and set forth above, the Panel

12

rejected this argument and held that coordination in a single multi-district proceeding was appropriate.

Plaintiffs' allegations in the underlying cases are analogous to the allegations in *Janus* and *Immunex*, and the Panel should grant Movants' Motion on the same grounds as transfer was granted in those cases. Plaintiffs in the underlying ARS cases universally allege an industry-wide practice by broker-dealers to manipulate the auction market for their own benefit. Plaintiffs universally allege an industry-wide practice by broker-dealers to affirmatively misrepresent and omit material facts related to the true nature of ARS and the auction rate market. Like the claims in *Janus* and *Immunex*, the plaintiffs' claims in the ARS cases are well-suited for coordinated treatment under section 1407. *Janus* and *Immunex* instruct that the presence of different defendants or slightly different legal theories do not defeat coordination; such distinctions are left for the transferee court to resolve and are not an adequate basis to deny transfer where common questions of fact exist in the underlying cases.[15] Movants have satisfied the "common question of fact" requirement of section 1407, and the Panel should grant the Motion.

### *Movants Satisfy the Other Factors Set Forth in Section 1407.*

Having fulfilled the threshold requirement of demonstrating a "common question of fact" under section 1407, Movants also satisfy the requirement that transfer "will be

---

[15]    *See also In re Cuisinart Food Processor Antitrust Litig.*, 506 F. Supp. 651, 655 (J.P.M.L. 1981) ("The transferee judge, of course, has the authority to schedule discovery and other pretrial proceedings on any issues unique to a particular action or party to proceed in separate tracks concurrently with the common pretrial proceedings, thus enhancing the efficient conduct of all aspects of this litigation. Moreover, the transferee judge has the power to provide that no party need participate in pretrial proceedings unrelated to that party's interests.") (internal citations omitted); *see also In re Pharmaceutical Indus. Average Wholesale Price Litig.*, 460 F. Supp. 2d 277, 278 (D. Mass. 2006) (transferee court organized defendant pharmaceutical companies into two tracks for pretrial proceedings while also making determination for all defendants as to the meaning of the term "average wholesale price" under Medicare Act).

for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a).

Transfer to the Southern District of New York will further the convenience of the parties and witnesses because the majority of the defendants have their corporate headquarters within that jurisdiction, and many of the key managerial witnesses and documents are located within that district.[16] The ARS were underwritten in New York, the auctions were conducted in New York, and the corporate marketing campaigns to promote the sale of ARS were typically directed from New York. Thus, the Southern District of New York is a convenient forum for a coordinated proceeding. *See In re Vonage Init. Public Offering Sec. Litig.*, 471 F. Supp. 2d 1354, 1356 (J.P.M.L. 2007) (noting that the presence of the defendant's corporate headquarters in the transferee forum was a factor supporting transfer); *In re Cuisinart Food Processor Antitrust Litig.*, 506 F. Supp. at 655 (noting that key witnesses and relevant documents are located in the same location as the defendant's corporate headquarters, thereby justifying transfer to that forum). One of the Defendants, Citigroup, filed a motion on June 3, 2008 with this Panel for an order transferring the Citigroup ARS cases filed around the country to Judge

---

[16]    *Chandler* Complaint (Exhibit 2) at ¶ 10; *Sanchez* Complaint (Exhibit 3) at ¶ 16; *Bonnist* Complaint (Exhibit 4) at ¶¶ 11 and 13; *Kassover* Complaint (Exhibit 5) at ¶¶ 11-12; *Kraemer* Complaint (Exhibit 6) at ¶ 10; *Burton* Complaint (Exhibit 7) at ¶¶ 9-10; *Stanton* Complaint (Exhibit 8) at ¶ 15; *Swanson* Complaint (Exhibit 12) at ¶¶ 9-11; *LHB Ins. Brokerage* Complaint (Exhibit 13) at ¶ 15; *Stockhamer* Complaint (Exhibit 15) at ¶¶ 11-12; *Wedgewood* Complaint (Exhibit 16) at ¶¶ 13-15; *Jamail* Complaint (Exhibit 18) at ¶¶ 9-10; *Miller* Complaint (Exhibit 19) at ¶ 15; *Ciplet* Complaint (Exhibit 20) at ¶¶ 10-11; *Oughtred* Complaint (Exhibit 21) at ¶¶ 9-10; *Grossman* Complaint (Exhibit 27) at ¶¶ 10-12; *Vining* Complaint (Exhibit 28) at ¶¶ 10-11; *Milch* Complaint (Exhibit 29) at ¶ 9; *Brigham* Complaint (Exhibit 30) at ¶ 11.

14

Swain of the Southern District of New York, so it is apparent that the proposed transferee district is acceptable to at least one defendant.[17]

Of the thirty-one pending cases that Movants seek to transfer, twenty-five are pending or have been ordered transferred to the Southern District of New York, making that district a logical transferee forum for the remaining six cases. The Southern District cases are presently assigned to eleven judges within the District. Although any of the eleven judges is surely qualified to preside over this litigation, Movants submit the following information for the Panel's consideration in selecting an appropriate transferee judge.

The earliest filed case, *Kassover v. UBS Financial Services, Inc., et al.*, Case No. 08-cv-2753, is assigned to the Hon. Lawrence M. McKenna. The parties appeared for a preliminary status conference in the litigation on May 6, 2008. During the conference, Judge McKenna informally inquired as to the probability of a coordinated MDL proceeding in the ARS litigation. In response to plaintiffs' counsel's comment that a motion before this Panel was under consideration, Judge McKenna appeared to indicate that he would not welcome assignment of a coordinated proceeding in this matter. Judge McKenna is also currently overseeing *In re Adelphia Communications Corp. Securities & Derivative Litig. (No. II)*, MDL No. 1529.

The second filed case (*Kraemer v. Deutsche Bank*) is assigned to the Hon. Loretta A. Preska, who has been assigned two later-filed ARS cases against Merrill Lynch, *Burton v. Merrill Lynch & Co., Inc. et al.*, Case No. 08-cv-3037 and *Stanton v. Merrill Lynch & Co., et al.*, Case No. 08-cv-3054, as well as two later-filed ARS cases against

---

[17]     Citigroup has notified the Panel of its intent to withdraw its previously filed Motion for Consolidation.

Oppenheimer, *Vining v. Oppenheimer Holdings Inc.*, Case No. 08-cv-4435 and *Grossman v. Oppenheimer & Co. Inc*, Case No. 08-cv-3528. Judge Preska currently is presiding over two MDL matters, *In re Digital Music Antitrust Litig.*, MDL No. 1780 (motion for leave to file Third Amended Complaint pending) and *In re Nortel Networks Corp. Sec. Litig.*, MDL No. 1659 (distributing class settlement proceeds).

Judge Preska's husband, Thomas J. Kavaler, is a senior partner at Cahill Gordon & Reindel. *In re Digital Music Antitrust Litig.*, MDL No. 1780, 2007 U.S. Dist. LEXIS 13567, *3 (S.D.N.Y. February 27, 2007) (Preska, J.). According to the firm's website, the firm has "long and close working relationships" with eight of the fifteen banks that are the subject of these proceedings, including Bank of America, Citigroup, Deutsche Bank, Goldman Sachs, JP Morgan Chase, Merrill Lynch, UBS and Wachovia.[18] The number and depth of these relationships could raise recusal issues under 28 U.S.C. § 455.

In the *Merrill Lynch* actions, Judge Preska notified the parties on April 2 that her husband's law firm, Cahill Gordon & Reindel LLP, "from time to time represents Merrill Lynch and/or its affiliates, and he works on those matters." *See* Exhibit 33 at pp. 1 and 2. On April 21, Judge Preska issued a Corrected Memorandum informing the parties that "the law firm in which my husband is a partner, Cahill Gordon & Reindel LLP, from time to time represents Merrill Lynch and/or its affiliates, and he does not work on those matters." *See* Exhibit 33 at p. 8 (emphasis in original).[19] Based on the Corrected Memorandum and the similar Memorandum issued in the *Deutsche Bank* case, Movants have not sought to recuse Judge Preska in the *Merrill Lynch* or *Deutsche* actions. Movants note, however, that Mr. Kavaler currently represents Wachovia in a case styled

---

[18]    *See* http://www.cahill.com/practices/020, last visited on June 12, 2008.

[19]    The Court issued a similar memorandum in the *Deutsche Bank* case. *See* Exhibit 33 at p. 9.

*Serio, et al. v. Wachovia Securities LLC,* 06-4681-DMC (D.N.J.), in which Movant's counsel Steven A. Weiss represents the plaintiff.[20]

In MDL No. 1780, Judge Preska ruled that a party's failure to raise recusal issues before this panel supported a finding that the transferee plaintiffs had waived their recusal rights. *See In re Digital Music Antitrust Litig.,* 2007 U.S. Dist. LEXIS 13567, at *7 (failure to raise potential recusal issues with MDL Panel made later motion to recuse based on husband's involvement in arguably related litigation untimely). In light of Judge Preska's decision in *Digital Music,* Movants respectfully reserve their rights to seek recusal with regard to any of the remaining defendants serviced by the Cahill firm.

For the reasons discussed above, the Southern District of New York appears to be the most convenient forum for the parties and witnesses in the ARS litigation. Movants note, however, that there are two cases pending in the Northern District of California, both assigned to the Hon. Jeffrey S. White. Should the Panel find that docket congestion, litigation expense or other considerations make transfer to another district desirable, Movants suggest transfer to Judge White of the Northern District of California, or any other judge with "the ability and temperament to steer this complex litigation on a steady and expeditious course." *See, e.g., In re Microsoft Corp. Windows Operating Sys. Antitrust Litig.,* MDL No. 1332, 2000 U.S. Dist. LEXIS 5559 (J.P.M.L. Apr. 25, 2000); *In re Bridgestone/Firestone, Inc., ATX, ATX II, & Wilderness Tires Prods. Liab. Litig.,* MDL No. 1373, 2000 U.S. Dist. LEXIS 15926 (J.P.M.L. Oct. 24, 2000).

---

[20]    The *Wachovia* ARS litigation is currently assigned to the Hon. Shira A. Scheindlin.

<u>CONCLUSION</u>

For the reasons set forth herein, Movants respectfully request that the Panel grant their Motion to Transfer for Coordination, and grant such other relief the Panel deems just and proper.

Dated:  June 12, 2008

STUEVE SIEGEL HANSON LLP

_____

Norman E. Siegel
Matthew L. Dameron
460 Nichols Road, Suite 200
Kansas City, MO 64112
(816) 714-7100
(816) 714-7101 (fax)
siegel@stuevesiegel.com
dameron@stuevesiegel.com

**GIRARD GIBBS LLP**
Daniel C. Girard
Jonathan K. Levine
Aaron M. Sheanin
601 California St, Suite 1400
San Francisco, CA 94108
(415) 981-4800
(415) 981-4846 (fax)
dcg@girardgibbs.com
jkl@girardgibbs.com
ams@girardgibbs.com

**SEEGER WEISS LLP**
Christopher Adam Seeger
Stephen A. Weiss
David R. Buchanan
One William Street, 10th Floor
New York, NY 10004
(212) 584-0757
(212) 584-0799 (fax)
cseeger@seegerweiss.com
sweiss@seegerweiss.com
dbuchanan@seegerweiss.com